IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VASILIOS FOTOPOULOS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 19-cv-02178-JMC |
| BANK OF AMERICA N.A., | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM</u>**

This suit arises out of Bank of America's ("Defendant" or "BANA") allegedly wrongful denial of Vasilios Fotopoulos' ("Plaintiff") request for a loan modification in April of 2009, under the federal Home Affordable Modification Program ("HAMP"). (ECF No. 1 at 2–3). The parties consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF No. 18) Now pending before the Court is Defendant's Motion to Dismiss for Failure to State a Claim. (ECF No. 16). Plaintiff has filed an Opposition, and Defendant filed a Reply. (ECF Nos 23 & 24). For the reasons outlined below, Defendant's Motion to Dismiss for Failure to State a Claim is GRANTED.

I. BACKGROUND

1. The Home Affordable Mortgage Program

In 2008, in response to rapidly deteriorating financial market conditions, Congress enacted the Emergency Economic Stabilization Act. *Wigod v. Wells Fargo*, 673 F.3d 547, 556 (7th Cir. 2012) (citing P.L. 110-343, 122 Stat. 3765). The "centerpiece of the Act was the Troubled Asset Relief Program ("TARP") which required the secretary, among other duties and powers, to

'implement a plan that seeks to maximize assistance for homeowners and . . . encourage the services of the underlying mortgages . . . to take advantage of . . . available programs to minimize foreclosures.'" *Id.* (quoting 12 U.S.C. § 5219(a)). Pursuant to this authority, in February of 2009, the Secretary set aside up to $50 billion of TARP funds to induce lenders to refinance mortgages with more favorable rates and thereby allow homeowners to prevent avoidable foreclosures. *Id.*

The Secretary negotiated Servicer Plan Agreements ("SPAs") with dozens of home loan servicers, including Bank of America. Under the terms of the SPAs, servicers agreed to identify homeowners who were in default, or likely would default on their mortgage payments soon, and, if certain criteria were met, to modify the loans of those eligible under the program. In exchange, servicers would receive a $1,000 payment for each permanent modification, along with other incentives. The SPAs require that servicers "shall perform the loan modification . . . described in . . . the Program guidelines and procedures issued by the Treasury . . . and . . . any supplemental documentation, instructions, bulletins, letters, directives, or other communications . . . issued by the Treasury." In such supplemental guidelines, the Treasury directed servicers to determine each borrower's eligibility for a modification by following a three-step process. U.S. Dep't of the Treasury, *Home Affordable Modification Program*, Supplemental Directive 09-01 at 1 (2009), https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf (hereinafter "Supplemental Directive 09-01").

First, the borrower must meet certain threshold requirements including: the loan originated on or before January 1, 2009; the loan was secured by the borrower's primary residence; the mortgage payments were more than 31 percent of the borrower's monthly income; and, for a one-unit home, the current unpaid principal balance was no greater than $729,750. *Id.* Second, the servicer calculates a modification using the "waterfall" method, which entails applying

2

enumerated changes in a specified order until the borrower's monthly mortgage payment ratio drops "as close as possible to 31 percent." *Wigod*, 673 F.3d at 557. Third, the servicer utilizes a Net Present Value ("NPV") test to assess whether the mortgage's modified value to the servicer would be greater than the return on the mortgage if unmodified. Supplemental Directive 09-01 at 4. If the NPV result of the modification scenario is greater than the NPV result for no modification, the result is deemed "positive," and the Treasury directive indicates "the servicer MUST offer the modification." *Id.* In the alternative, if the NPV result is deemed "negative," the servicer has the option of performing the modification, but is not obliged to do so. *Id.*

2. Trial Period Plan

When a borrower qualifies for a HAMP loan modification, the modification process itself consists of two additional stages. *Wigod*, 673 F.3d at 557. First, there is a trial period (of approximately three months) during which Trial Period Payments ("TPP") must be made, and the lender "must service the mortgage loan . . . in the same manner as it would service a loan in forbearance." Supplemental Directive 09-01 at 17. If the borrower complies with all terms of the TPP Agreement (including making all required payments and providing all required documentation), and if the borrower's representations remain true and correct, the servicer is required to offer a permanent modification at the conclusion of the trial period. *See* Supplemental Directive 09–01 ("If the borrower complies with the terms and conditions of the Trial Period Plan, the loan modification will become effective on the first day of the month following the trial period . . .").

3. Plaintiff's Loan

On April 28, 2004, Countrywide Home Loans, the predecessor in-interest to Bank of America,[1] provided Plaintiff with a loan for $199,850.00. (ECF No. 1 at 2). Originally, Plaintiff could afford his monthly mortgage payments of $1,515.01, but eventually he found himself in financial distress, and "requested" and "applied" for a HAMP loan modification in April of 2009. *Id.* ¶¶ 8–9. Given that Plaintiff "requested and applied for a HAMP loan modification," in writing BANA could require him to provide documentary proof of his financial information before determining whether his loan would be eligible for a TPP. *Wigod*, 673 F.3d at 558. According to Plaintiff, BANA took this route, and on numerous occasions requested documents and HAMP applications from Plaintiff, but this was in vain, as BANA merely denied his mortgage modification requests for various, and frequently inconsistent, reasons. (ECF No. 1 ¶ 17). There is no indication that any TPP agreement was signed, returned to the bank, or that any modified TPP payments were made.

Plaintiff contends that because BANA is a HAMP participant, it was required to comply with the HAMP Guidelines and evaluate Plaintiff's loan to determine whether he qualified for a loan modification or other foreclosure-prevention alternative — prior to selling the home at a foreclosure sale. *Id.* ¶ 16. Accordingly, when Defendant denied Plaintiff a loan modification "on the premise that the loan holder-investor did not offer such modifications," BANA failed to meet its obligations under HAMP. *Id.* ¶ 15. Plaintiff's Complaint asserts three counts against BANA: (1) wrongful denial of HAMP loan modification; (2) breach of contract; and (3) constructive fraud. (ECF No. 1).

---

[1] For simplicity, we refer only to BANA throughout the remainder of this Memorandum.

In the pending Motion, Defendant avers that Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because: (1) no private right of action exists under HAMP; (2) Plaintiff fails to allege the necessary elements of a contract; (3) Plaintiff fails to plead any facts amounting to fraud, or to allege a fiduciary duty owed by BANA; and (4) the claims are barred by the statute of limitations. (ECF No. 16-1 at 4–8).

II. STANDARD OF REVIEW

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To survive a Rule 12(b)(6) motion to dismiss "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which necessitates "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995). Further, the Court must construe the facts, and reasonable inferences from the facts, in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Petry*, 597 F. Supp. 2d at 562. In addition, as discussed in more detail below, Plaintiff's claim for constructive fraud must satisfy Rule 9(b)'s heightened pleading standard. *See Palermino v. Ocwen Loan Servs., LLC*, No. TDC-14-0522, 2015 WL 6531003, at *2 (D. Md. Oct. 26, 2015) (utilizing heightened pleading standard in the context of an

inducement to file a loan modification application shortly after a previous application was rejected, false claims that a new agreement would consolidate all outstanding arrears, and detrimental reliance in the form of substantial financial outlays).

In reviewing a motion to dismiss, courts generally are limited to considering the sufficiency of the allegations as set forth in the complaint and those documents attached or incorporated into it. *Zaz v. Chelsea Therapuetics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). Nonetheless, under limited circumstances, when resolving a Rule 12(b)(6) Motion a court may consider documents beyond the complaint without converting the motion to dismiss into one for summary judgment. *Sizer v. Oshinnaiye*, No. ELH-19-569, 2020 WL 263493, at *4 (D. Md. Jan. 17, 2020). As pertinent to this case, the Court may also consider documents attached to the motion to dismiss (even if not originally attached or expressly incorporated), so long as they are integral to the complaint and there is no dispute about the document's authenticity. *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). In addition, a court may take judicial notice of matters of public record.[2]

In Defendant's Reply, it argues that "in an attempt to salvage" the deficient Complaint Plaintiff asserts a host of new allegations and includes exhibits that were "not attached to his original Complaint, and or in any way referenced in the Complaint," and that this is inappropriate as a plaintiff may not amend his complaint via an Opposition to a Motion to Dismiss. (ECF No. 24 at 2). Plaintiff appended several exhibits to his motion, including letters from BANA to Plaintiff regarding the alleged agreement. Although Defendant correctly notes that the exhibits provided to support Plaintiff's claims are new, the underlying allegations remain the same as those addressed

---

[2] *Thompson v. JP Morgan Chase Bank, N.A.*, No. WDQ-13-1982, 2014 WL 4269060, at *1 n.5 (D. Md. Aug. 27, 2014) (recognizing matters of public record include state court records and filings).

in the Complaint. These documents are integral to the Complaint, and thus the Court may consider these without converting the Motion to one for Summary Judgment.

III. DISCUSSION

BANA argues dismissal is appropriate for four reasons: (1) HAMP contains no private cause of action; (2) no contract existed between the parties; (3) the facts alleged fail to support a claim for constructive fraud; and (4) Plaintiff's claims are barred by the statute of limitations. These contentions, and Plaintiff's Response in Opposition, are addressed in turn.[3]

A. No Private Cause of Action Exists under HAMP

Both sides acknowledge that no private cause of action exists under HAMP. *See* (ECF No. 23 at 5) ("[E]ven though there is no private right of action under HAMP . . ."). As the Court of the Appeals for the Seventh Circuit noted:

> We have identified more than 80 other federal cases in which mortgagors brought HAMP-related claims. The legal theories relied on by these plaintiffs fit into three groups. First, some homeowners tried to assert rights arising under HAMP itself. Courts have uniformly rejected these claims because HAMP does not create a private federal right of action for borrowers against servicers. In the second group, plaintiffs claimed to be third-party beneficiaries of their loan servicers' SPAs with the United States. Most but not all courts dismissed these challenges as well, holding that borrowers were not intended third-party beneficiaries of the SPAs . . . . [Plaintiff] is in the third group, basing claims directly on the TPP Agreements themselves. *Wigod*, 673 F.3d at 559 n.4 (citations omitted).

Courts have uniformly rejected claims of the nature asserted here — direct violations of HAMP under a private cause of action. *See, e.g.*, *See also Campbell v. CitiMortgage, Inc.*, 2014 WL 4924251, at *7 (M.D.N.C. Sept. 30, 2014) ("Plaintiffs cannot overcome HAMP's lack of a private right of action."); *Cave v. Saxon Mortg. Servs., Inc.*, 2012 WL 1957588, at *4 n.4 (E.D.

---

[3] The Court has rearranged the order of Defendant's arguments in the interest of clarity.

Pa. May 30, 2013) ("HAMP and TPPs have been the subject of scores of suits across the country. . . . These suits were mostly unsuccessful, as courts held that there was no private right of action under HAMP . . . ."); *Simon v. Bank of Am., N.A.*, 2010 WL 2609436, at *10 (D. Nev. June 23, 2010) ("Other district courts have consistently held that [HAMP] does not provide borrowers with a private cause of action against lenders for failing to consider their application for loan modification, or even to modify an eligible loan."). As there is no private cause of action under HAMP, Count I of Plaintiff's Complaint is DISMISSED.

B. Third-Party Beneficiary

Plaintiff also asserts the *Wigod* Court's "second" legal theory set forth above, and contends that despite a lack of privity with the Defendant, Plaintiff can, nonetheless, sue for breach of contact, as he was an intended beneficiary of the underlying agreement. (ECF No. 23 at 6). With respect to this "second group" of claims:

> [P]laintiffs claimed to be third-party beneficiaries of their loan servicers' SPAs with the United States. Most but not all courts dismissed these challenges as well, holding that borrowers were not intended third-party beneficiaries of the SPAs. *Wigod*, 673 F.3d at 559 n.4.

In accordance with the majority of precedent, a servicer's participation in HAMP is an agreement between a servicer and the federal government—not between a servicer and any of its borrowers, so HAMP itself does not give a borrower (*i.e.*, Plaintiff) any contractual rights against his or her servicer (here, BANA). *See Wigod*, 673 F.3d at 559 ("Congress did not create a private right of action to enforce the HAMP guidelines, and since *Astra*, district courts have correctly applied the Court's decision to foreclose claims by homeowners seeking HAMP modifications as third-party beneficiaries of SPAs."); *Salami v. JPMorgan Chase Bank, N.A.*, 2019 WL 2526467,

at *6 (M.D.N.C. June 19, 2019) ("[A servicer's HAMP] agreement with the U.S. Treasury was an agreement between the [servicer] and the Treasury, an agreement to which Appellants were not a party and which they have no authority to enforce."); *Mbakpuo v. Wells Fargo Bank, N.A.*, No. RWT-13-2213, 2015 WL 4485504, at *7 n.14 (D. Md. July 21, 2015) ("*Wigod* is easily distinguishable, because Wells Fargo never offered or promised to offer Mbakpuo a HAMP modification. Moreover, Mbakpuo's claim fails not because he lacks a private cause of action under HAMP, but rather because he lacks any evidence showing that Wells Fargo defrauded him or breached any contract.").

Accordingly, this claim, as incorporated in Count II, is DISMISSED.

C. Contract–Privity

In an argument somewhat adjacent to *Wigod's* "third group," Plaintiff asserts a claim as a party in direct privity to BANA. *Wigod*, 673 F.3d at 557 n.4. Unlike in *Wigod*, however, this claim is not based on a breach of any TPP agreement (since no such agreement existed), but instead is premised generally on BANA's "offer to modify the plaintiff's mortgage loan on several occasions," and subsequent failure to do so. (ECF No. 1 ¶ 23). Under Maryland law the formation of a contact requires: mutual assent (*i.e.*, an offer and acceptance), an agreement with definite terms, and sufficient consideration. *CTI/DC, Inc. v. Selective Ins. Co.*, 392 F.3d 114, 123 (4th Cir. 2004). To state a claim for breach of contract, a plaintiff must plead the existence of a contractual obligation owed by the defendant to the plaintiff and a material breach of that obligation. *RRC Northeast, LLC v. BAA Md., Inc.*, 413 Md. 638, 658 (2010).

Here, there is no indication that Plaintiff and BANA entered into any agreement, aside from the original deed of trust. Plaintiff merely states "Defendant extended an offer to modify the

Plaintiff's mortgage loan," and "Plaintiff complied with all of the qualification requirements, and provided all of the documentation requested by Defendant." (ECF No. 1 ¶¶ 23–24). Clearly, this back-and-forth does not indicate any meeting of the minds, and BANA did not express any intent to be bound, thus no agreement existed, which in could be breached. *Neil*, 686 Fed. App'x at 222 n.2; *Pennington v. HSBC Bank USA, N.A.*, 493 Fed. App'x 548, 554 (5th Cir. 2012). Specifically, when viewed in the light most favorable to Plaintiff, as the Court is required to do at this stage, even if BANA provided a variety of reasons to Plaintiff to explain why he was not eligible (*i.e.*, the loan holder-investor did not offer such modifications, he failed to timely provide BANA with the documents requested) this lack of clarity clearly would not amount to an understanding that any agreement, in fact, did exist.

Plaintiff has not included a copy of any additional agreement (whatsoever), and Plaintiff acknowledges that Defendant never approved a loan modification, but merely contends that Defendant continued to reassure Plaintiff that his mortgage was being *reviewed*. (ECF No. 23 at 3–4) (noting Defendant indicated to Plaintiff that he was eligible for a foreclosure modification review, and provided HAMP modification forms to the Plaintiff, so that Plaintiff may pursue said modification). This is not enough to form a contract.[4] Thus, this case is distinguishable from that cited by Plaintiff, *Yacoubou v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 623, 629 (D. Md. 2012), wherein the Plaintiff signed a Modification (drafted by the Defendant Bank), and the Plaintiff signed it and mailed it back to Wells, and *then*, Wells Fargo breached this agreement when it refused to accept Plaintiff's mortgage payments under the Modification. *Id.* at 636.

---

[4] *Tribalco, LLC v. Liteye Sys., Inc.*, No. CBD-17-2827, 2018 WL 2237584, at *2 (D. Md. May 16, 2018) ("Longstanding Maryland law sets forth the pleading standard for a breach of contract claim. Such a claim 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'") (quoting *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 416 (2012)).

This case is also distinct from those wherein a homeowner successfully complied with the new loan repayment terms under a TPP agreement reached with the servicer, thereby creating legally enforceable rights for breach of that agreement. *Neil v. Wells Fargo Bank, N.A.*, 686 Fed. App'x 213, 217 (4th Cir. 2017) ("Under a TPP governed by HAMP, the lender is 'required to offer some sort of good-faith permanent modification . . . consistent with HAMP guidelines' once the borrower 'fulfill[s] the TPP's conditions.'") (quoting *Wigod*, 673 F.3d at 565).

"The applicable case law is clear that, absent a TPP Agreement, a suit that seeks the general enforcement of the HAMP guidelines must fail." *Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614, 618 (D. Md. 2012), *aff'd*, 714 F.3d 769 (4th Cir. 2013). As there is no claim by Plaintiff that a TPP agreement was executed, Plaintiff's breach of contract claim cannot proceed.[5]

Although this Court is to take all material allegations as true and construe them in a light most favorable to the Plaintiff, the Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. A formulaic recitation of a cause of action with conclusory allegations is not sufficient. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). As the Complaint fails to allege sufficient facts to demonstrate the existence of any contract, nor any corresponding breach, this latter part of Count II, is DISMISSED.

D. Constructive Fraud- Fiduciary Duty

The Maryland Court of Appeals defines constructive fraud as a "breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent

---

[5] *Cf. Spaulding*, 920 F. Supp. 2d at 619 (D. Md. 2012) ("Plaintiffs do not allege that a TPP Agreement was in place or even that it was offered. The Complaint, rather, merely alleges Plaintiffs were potentially entitled to a TPP because they were eligible under the HAMP guidelines. Plaintiffs' claims, therefore, cannot survive a motion to dismiss.").

because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Canaj, Inc. v. Baker & Division Phase III, LLC*, 391 Md. 374, 422 (2006). "Constructive fraud, as it might be relied on by an owner of property being sold for taxes, would normally relate to notice and things of that nature that would hinder the delinquent taxpayer from exercising his right to redeem, i.e., pay the delinquent taxes." *Id.* "Because constructive fraud is 'a most serious charge,' it is 'not lightly found by the courts and requires clear and convincing proof to establish.'" *Masciana v. Thompson*, 2019 WL 5067190, at *9 (Md. Ct. Spec. App. Oct. 9, 2019) (quoting *Scheve v. McPherson*, 44 Md. App. 398, 406–07 (1979)). In accordance with Federal Rules of Civil Procedure 9(b), when alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." *See Willis v. Bank of America, N.A.*, No. ELH-13-2615, 2015 WL 5157501, at *9 (D. Md. Sept. 2, 2015). At minimum, a plaintiff must describe the "time, place, and contents of the false representations, as well as the identity of the persons making the misrepresentation and what he obtained thereby." *United States v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2012) (utilizing this standard in False Claims Act context).

However, as noted by Plaintiff, in the context of concealment or omission of material facts, meeting 9(b)'s particularity requirement may take a different form.[6] The "relaxed Rule 9(b) analysis" applies only to claims of omission, and as Plaintiff makes no claim that Defendant omitted material facts this is inapplicable. *See Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 815, 823 (D. Md. 2005). To the contrary, Plaintiff reiterates that the Defendant consistently denied his requests, and "continued to pepper the Plaintiff with misleading and untrue

---

[6] *See Shaw v. Williamson & Brown Tobacco Corp.*, 973 F. Supp. 539 (D. Md. 1997) ("Such particularity cannot be met in a concealment case, however, because an omission 'cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'" (quoting *Flynn v. Everything Yogurt*, 1993 WL 454355, at *9 (D. Md. Sept. 14, 1993))).

statements regarding his medication and the status of his mortgage loan." (ECF No. 23 ¶ 10).[7] Plaintiff's argument twists and turns into a variety of directions, which seemingly contradict each other. For instance, Plaintiff argues that he has "sufficiently pled that the Defendant continued to deceive the Plaintiff over the course of several years by informing the Plaintiff that he is eligible for mortgage modification while the Plaintiff was not eligible for such relief." (ECF No. 23 ¶ 29). Plaintiff provides no indication of what was omitted from these conversations. In addition, while no material misrepresentations or omissions appear present, Plaintiff also fails to allege what BANA obtained through the fraud and does not show that he reasonably relied on such misrepresentation to his detriment.[8] The Complaint's bald assertions are exactly the type intended to be guarded against by the heightened pleading standard.[9]

A key element of "constructive fraud" is breach of a legal or equitable duty. *Scheve*, 44 Md. App. at 406. Plaintiff acknowledges that banks and mortgage servicers do not owe customers a fiduciary duty. (ECF No. 23 ¶ 25).[10] However, he contends that four special circumstances exist when there is an exception to this rule.[11] As applicable here, Plaintiff argues that such a

---

[7] *Hill*, 383 F. Supp. 2d at 823 ("The reasoning of *Shaw* and similar decisions, however, does not nullify Rule 9(b)'s particularity requirement in cases like this, where Defendant'[s] liability for fraud is predicated on its "partial and fragmentary statement of fact," which presumably can be stated with particularity by Plaintiff.").

[8] *See Gibson v. Nationstar Mortg.*, LLC, 2015 WL 302889, at *3 (D. Md. Jan. 21, 2015) ("Even if Plaintiff could identify any misrepresentation made by Defendant (which he has not), his MCPA claim would still fail because he does not allege that he *relied* on any false or misleading statements.").

[9] *See* (ECF No. 23 ¶ 12) ("As the direct result of the Defendant's actions, the Plaintiff suffered financial loss, damage to his credit and business operations.").

[10] On occasion, Plaintiff confuses "borrower" and "servicer" in his arguments. "[I]n the instant case, the servicer, the Plaintiff herein, took the extra services on behalf of the borrowers, namely processing the borrower's modification application." (ECF No. 23 ¶ 26).

[11] *Windesheim v. Larocca*, 443 Md. 312, 338–39 (2015) ("There are four 'special circumstances' under which a fiduciary relationship can exist between a lender and a borrower: the lender '(1) took on any extra services on behalf of [the borrowers] other than furnishing . . . money . . . ; (2) received a greater economic benefit from the transaction other than the normal mortgage; (3) exercised extensive control . . .; or (4) was asked by [the borrowers] if there were any lien actions pending.'") (quoting *Polek*, 424 Md. at 366).

relationship can arise when the servicer took extra services on behalf of the borrower, including processing of the borrower's modification application, and receiving additional compensation for doing so. (ECF No. 23 ¶ 26). "This Court agrees with every other court to consider the issue that the HAMP loan modification process does not create the 'special circumstances' required to form a tort duty under Maryland law." *Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 919 (D. Md. 2012) (citing cases). As indicated by Defendant, Plaintiff fails to allege the existence of any legal or equitable duty that BANA owed to him, and thus the constructive fraud claim fails to state a claim upon which relief can be granted. (ECF No. 24 at 4–5). Accordingly, Count III is DISMISSED.

E. Statute of Limitations

As the Court has found the previous counts to lack substantive merit, it need not reach this argument.

IV. CONCLUSION

For the reasons outlined above, Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 16) is GRANTED. A separate Order shall follow.


Date: February 7, 2020                                /s/
                                                      J. Mark Coulson
                                                      United States Magistrate Judge